**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| DELORES E. ROSS, | : | Bankruptcy No. 04-33649DWS |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| | : | |
| DELORES E. ROSS, | : | Adversary No. 04-1024 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITIFINANCIAL MORTGAGE CO., INC., | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

This adversary proceeding was brought by the Debtor, Delores E. Ross ("Debtor") against Citifinancial Mortgage Co., Inc. ("Citimort"), to object to Citimort's proof of claim (the "Claim") and recoup damages against the Claim under the Truth in Lending Act ("TILA"). Trial having been held on this matter, it is ripe for adjudication.

**FINDINGS OF FACT**

This case demonstrates the difficulty faced by plaintiffs in bringing TILA claims on mortgage transactions decades after they have occurred. The passage of time and the reality that mortgage loans are typically sold and transferred numerous times usually results in the loss of relevant documents and the fading of memory. The factual record put on by the parties was, at best, sparse. The only witness called was the Debtor, and her recollection of the relevant events and transactions at issue was poor to nonexistent. Indeed, her demeanor and responses led the Court to doubt whether she fully understood many of the questions that were asked of her. The following findings are based for the most part on the few documents submitted by the parties and facts of which I may take judicial notice. Not surprisingly, disposition of this matter therefore turns upon Debtor's burden of proof as plaintiff in this adversary proceeding.

On or about October 9, 1991, Debtor entered into a loan agreement with Associates Consumer Discount Company ("Associates"), evidenced by a Loan Agreement and a Mortgage securing the loan to her residence at 641 Yeadon Ave., Yeadon, PA 19050 (the "Loan"). Exhibits D-1, D-2.[1] The Loan had an adjustable rate of interest, i.e., 6.05 percentage points above the "Bank Prime Loan Rate" as published in the Federal Reserve Board's Statistical Release. Exh. D-2. At the time the Loan was commenced,

---

[1] Debtor acknowledged her signature on the Loan Agreement supporting the Loan. Exh. D-2. While she was not sure about the signature on the Mortgage document, Exh. D-1, she did not deny it as a forgery. Moreover, she did recollect, albeit vaguely, attending a closing on the Loan in Warminster, PA. In any case, as finder of fact, determination of the authenticity of Debtor's signature is mine. Levy v. Lenenberg, 795 A.2d 419, 423 (Pa. Super. 2002) (*citing* 42 Pa. C.S.A. § 6111(d)). After comparing the signatures on the two documents, I find that they are identical.

the interest rate was 14.05% and Debtor's monthly payments were $964.38. The monthly payments were subject to annual adjustment to reflect the changing interest rate. Id. The Loan Agreement also indicates a final payment date of October 15, 2006. Id. Debtor received a separate "Disclosure Statement" at the time the Loan was commenced identifying, inter alia, the annual percentage rate, finance charge, an itemization of the amount financed, payment schedule, and total number of payments. Exhibit D-11 at sub-exhibit F.

Little evidence was presented with regard to Debtor's payment history to Associates. Plaintiff conceded that she may have fallen behind in payments soon after entering into the Loan. This is consistent with an agreement she entered into with Associates on May 14, 1992 (the "First Extension") that indicates Debtor was delinquent and extended the maturity date of the Loan one month to November 16, 2006. Exh. R-5.[2] She entered into another extension on February 24, 1994, purporting to further extend the Loan to February 16, 2007 (the "Second Extension"). Exh. R-6.[3]

---

[2] The document indicates that, unless payment of money is noted in the attached receipt, unpaid accrued interest continues to accrue. Id. No payment is noted with respect to the First Extension.

[3] The Second Extension indicates an interest payment of $53.93. I also note that R-5 and R-6 each purport to extend the Loan one payment period, i.e., one month. Given that there is a two month discrepancy between the maturity date on R-5 (11/16/06) and R-6 (02/16/07), it seems implicit that there must have been at least one other extension executed in the interim between these two extensions. Neither party has raised this. I mention it herein only as an example of the unreliability of the factual record presented to the Court.

In addition, Citimort presented one other extension agreement dated November 18, 1998. Exhibit. R-7. This agreement is unsigned. While Debtor made no objection to the admission of Exhibits R-5 through R-7, she was not questioned on these documents nor did Citimort proffer any supporting testimony. Absent any supporting testimony, I do not find Exhibit R-7 sufficiently probative of a valid extension agreement.

Notably, both sides agree that some kind of modification was made to the Loan on or about May 18, 1998 (the "Loan Modification"). Joint Pretrial Statement ¶ II.1; Defendant's Proposed Findings of Fact and Conclusions of Law ("Citimort FOFCOL") ¶ 5. However, neither side produced any documentary evidence of the Loan Modification, nor does Debtor have any recollection of having entered into any subsequent agreement. Debtor agrees that at some point the monthly payments fell to $675. Exhibit D-7 (Citimort statement dated February 5, 2005).[4] However, the reason for this reduction or when it began is unexplained by any record evidence. Citimort asserts that it was not involved in either the Loan or Loan Modification. Citimort's Response to Interrogatory No. 5, Exhibit D-11. Indeed, the record is devoid of any attempt to explain how or when Citimort came to be involved with the Loan. Counsel for both parties simply tried their cases as though Citimort and Associates were interchangeable.

Notwithstanding its lack of involvement or possession of any documents regarding the Loan Modification, Citimort's counsel now asserts that the alleged Loan Modification was an extension of the Loan from the original term of 180 months to 324 months, which it cites to explain the change in monthly payments. Citimort FOFCOL ¶ 5, 10. Not only is this allegation unsupported by any testimony or documents, it is wholly inconsistent with Citimort's previous position, that the change in payments is attributable to the adjustable interest rate of the original Loan. Citimort's Response to Interrogatory No. 2, Exhibit D-11.

---

[4] Upon the prodding of her counsel, Debtor testified that she has been paying $675 since at least December 2002. Less than a minute later, when questioned whether she was paying this amount prior to January 2003, she answered that she wasn't sure. It became abundantly clear to the Court that Debtor has no real recollection as to when her payments changed.

-4-

Debtor's counsel similarly pulls from whole cloth an explanation of the change in payments, asserting that the change implies a refinancing of the Loan occurred.[5] While I agree that some event must have precipitated the lowered payment amount, I simply cannot ascertain on this record what it was or when it occurred.

The only clear facts on this record is Debtor's numerous attempts to deal with her mortgage debt through a series of unsuccessful Chapter 13 cases. On September 10, 1999, Debtor filed her first bankruptcy case, No. 99-31426,[6] which was dismissed on May 2, 2002 due to her failure to make payments to the Chapter 13 Trustee. During the pendency of that case, Associates filed a motion for relief from stay, which the Court granted on October 15, 2001.

It was Citimort, however, that subsequently filed a complaint on January 16, 2002 in the Court of Common Pleas, Delaware County, Pennsylvania (the "Foreclosure Action") and obtained a judgment in foreclosure on March 22, 2002 in the amount of $86,140.63 (the "Foreclosure Judgment"). Exhibits D-3, R-2, and R-3.[7]

Debtor filed her second bankruptcy case, No. 02-18964, on June 19, 2002. Citimort filed a motion for relief from the automatic stay, which was granted on September 5, 2002 based upon Citimort's certification of no response by Debtor. Debtor's case was dismissed

---

[5] This is a legal conclusion which I address below. Infra Discussion.

[6] I shall take judicial notice of the docket entries in this and prior cases. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D.Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

[7] Debtor had no recollection of the foreclosure action.

soon thereafter on September 19, 2002 given that she was not making payments to the Chapter 13 Trustee and had not appeared at her § 341 meeting of creditors.

Debtor's third Chapter 13 case, No. 02-37870, this time with Mr. Scholl as counsel, was filed December 17, 2002. After almost two years of bankruptcy protection, Debtor's third case was subsequently converted to one under Chapter 7. Citimort's motion for relief from the automatic stay was granted on August 16, 2004, two days before Debtor's discharge.[8]

The instant Chapter 13 case was filed on October 8, 2004. Citimort filed the Claim on November 5, 2005 for the Foreclosure Judgment amount of $86,140.63. This adversary proceeding was filed a month later on November 15, 2005.

**DISCUSSION**

Notwithstanding the lack of full documentation regarding the underlying Loan and alleged Loan Modification, Debtor concurs that the Foreclosure Judgment is the starting point for determining the amount of the Claim: $86,140.63. Plaintiff-Debtor's Response to [Citimort FOFCOL] at 2. Debtor seeks to use alleged violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., by Associates and/or Citimort to recoup against the Claim as established by the Foreclosure Judgment.[9] Her position is that, if

---

[8] The docket for this case reflects a serious of filings reflecting attempts by Citimort and Debtor to address the Claim.

[9] To the extent that Citimort appears to argue that Debtor is precluded from raising her TILA claims by her failure to do so in the Pennsylvania foreclosure action, I respectfully disagree. Pennsylvania law would not have allowed Debtor to raise TILA claims as a defense to a foreclosure action, which is strictly *in rem*. Woolaghan v. United Mortgage Services, Inc. (In re Woolaghan),

-6-

proven, the recoupment she would be allowed would greatly reduce if not cancel out entirely the amount of the Claim.

TILA is a federal statute governing the terms and conditions of consumer credit. Its purpose is to aid unsophisticated consumers lest they be easily misled as to the costs of financing. Shepeard v. Quality Siding & Window Factory, 730 F.Supp. 1295, 1299 (D.Del. 1990). To that end, TILA and the regulations promulgated thereunder require certain disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit. Id. The Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"), is an amendment to TILA and requires that with regard to certain mortgages ("HOEPA Mortgages"),[10] additional disclosures must be made beyond those that are required by TILA generally. 15 U.S.C. § 1639 ("HOEPA Disclosures"). See also Solar v. Millenium Financial, Inc., 2002 WL 1019047, at * 3 n. 4 (E.D. Pa.2002).

In 15 U.S.C. § 1604, Congress authorized the Federal Reserve Board to "prescribe regulations to carry out the purposes" of the TILA. Pursuant to this authority, the Federal Reserve Board promulgated "Regulation Z," which is memorialized in 12 C.F.R. § 226. Rossman v. Fleet Bank (R.I.) National Association, 280 F.3d 384, 389 (3d Cir. 2002). The Board "also published extensive 'Official Staff Interpretations.' 12 C.F.R. Pt. 226,

---

140 B.R. 377, 382 (Bankr. W.D. Pa. 1992). Moreover, while the applicable statute of limitations may preclude Debtor from asserting TILA violations affirmatively, it does not affect her right to assert them defensively as recoupment against the Claim. Id.

[10] A HOEPA Mortgage is a "mortgage referred to in section 1602(aa) of this title." 15 U.S.C. § 1639(a)(1).

Supp. I." Id.  The Supreme Court has instructed that "[c]ourts should honor that congressional choice.  Thus, while not abdicating their ultimate judicial responsibility to determine the law . . . judges ought to refrain from substituting their own interstitial lawmaking for that of the Federal Reserve, so long as the latter's lawmaking is not irrational." Ford Motor Credit Company v. Milhollin, 444 U.S. 555, 568, 100 S.Ct. 790 (1980).  See also Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219, 101 S.Ct. 2266 (1981) ("absent some obvious repugnance to the statute, 'Regulation Z' should be accepted by the courts, as should the Board's interpretation of its own regulation.")  In analyzing the Debtor's contentions, my guideposts are therefore the statutory provisions of the TILA as well as Regulation Z and the Official Staff Interpretations.

With respect to the Loan transaction, Debtor does not refute receiving the Disclosure Statement produced by Citimort.  Exhibit D-11 at sub-exhibit F; Plaintiff's Proposed Findings of Fact and Conclusions of Law ¶¶ 3, 12 ("Debtor's FOFCOL").  Nor does she assert an inaccuracy in the Disclosure Statement which violates TILA.[11]  Rather, Debtor appears to rest her claim on the allegation that the <u>additional</u> disclosures required by HOEPA were not provided to Debtor.  Complaint ¶ 10; Pretrial Statement ¶¶ 5-6.

---

[11] Debtor characterizes the Loan Agreement as one which includes a "balloon payment due on October 15, 2006, although [it] is not clearly disclosed therein." Debtor's FOFCOL ¶2; Pretrial Statement, Contested Facts ¶ 1.  It is unclear whether Debtor is even asserting this shortcoming as a violation of TILA, but in any case she cites no evidence to support the assertion.  A balloon payment is a substantial payment of principal due after a series of payments under a note. Blacks Law Dictionary 143 (6th ed. 1990).  Both the Loan Agreement and Disclosure Statement disclose 180 payments of $964.38, which totals $173,588.40, i.e., the exact amount identified in both documents under "Total of Payments."  There is no final payment of principal after these payments.

Assuming *arguendo* that the Loan is a HOEPA Mortgage subject to the additional disclosure requirements,[12] the only evidence that Debtor seems to rely upon for the alleged violation is the absence of HOEPA Disclosures in the documents produced by Citimort during discovery. Debtor has wrongly placed the burden of production upon Citimort. As Debtor's counsel correctly noted when he sat upon this bench, "the burden of proving compliance with TILA falls upon a lender only after a debtor has produced or provided some evidence or testimony that a TILA violation has occurred." Martins v. Carteret Savings Bank (In re Martins), 1991 WL 126413, *2 (E.D. Pa. July 10, 1991) (Scholl, J.); accord Cobb v. Mortgage Default Services (In re Cobb),122 B.R. 22, 26 (Bankr. E.D. Pa. 1990) (Scholl, J.). Moreover, placing the initial burden upon the consumer to prove TILA non-compliance with respect to a loan consummated in 1991 is consistent with Regulation Z's record retention

---

[12] A HOEPA Mortgage, in turn, is defined as a mortgage in which:

> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of--
>
> (I) 8 percent of the total loan amount; or
> (ii) $400.

15 U.S.C. § 1602(aa). Debtor relies upon the latter "points and fees test" articulated under subsection B. The determination of what constitutes "points and fees" as well as the "total loan amount" is an extremely complicated and mixed question of fact and law, requiring in-depth analysis of Regulation Z. Neither Debtor nor Citimort made any attempt to provide this analysis, instead making bald-faced assumptions as to what the points and fees or total loan amount were with respect to the Loan. As I am assuming that the Loan is subject to HOEPA's requirements, I need not delve unaided into the points and fees test.

provision, which only requires a lender to maintain records of its compliance for a period of two years. 26 C.F.R. § 226.25(a).

Here, Debtor was never even questioned at trial by her counsel as to whether she received <u>any</u> required disclosures prior to or at the closing of the Loan or even whether she had conducted a search of her papers for such disclosures. Absent any testimony or other evidence by the Debtor of the purported TILA violation, Citimort had no obligation to produce evidence of its compliance.[13]

With respect to the purported Loan Modification on May 18, 1998, as noted above, I simply have no record evidence to support that such a transaction occurred. Admittedly, the significant change in Debtor's monthly payment from approximately $900 to $600 does imply that something occurred to the structuring of the Loan obligations. Unfortunately, I have no idea what that was or when it occurred. Moreover, even if I find by implication that the Loan was modified in some way, this alone is not enough. As a general rule, events subsequent to a consumer loan transaction do not affect the validity of the initial disclosures or require the creditor to make further disclosures. 15 U.S.C. § 1634.

---

[13] Even had Debtor been questioned, it is unlikely given her other testimony, that she would have had any memory of receiving a disclosure statement and would have been able to present probative evidence. <u>See</u> In re Mcknight, 2005 WL 1313519, *5 (May 31, 2005) (Sigmund, J.) (Debtor's testimony that she did not remember receiving TILA disclosure statement was insufficient to require lender to produce evidence where debtor lacked knowledge as to what such a form looked like and did not even testify that she reviewed her own records); Cobb v. Mortgage Default Services (In re Cobb), 122 B.R. 22, 25-26 (Bankr. E.D. Pa. 1990) (Scholl, J.) (Debtor, when questioned by her counsel, indicated no knowledge of whether she received a TILA disclosure statement or what the contents of such a document might be therefore "provided no evidence whatsoever that there has been a TILA violation in the transaction."). Compare Cole v. Cenlar Fed. Sav. Bank (In re Cole), 122 B.R. 943, (Bankr. E.D. Pa. 1991) (finding *prima facie* TILA case where Debtor provided a fairly accurate overview of the papers received and rather convincingly reaffirmed her certainty that the disclosure statement had omitted required information) (Scholl, J.).

Regulation Z does define certain narrow circumstances where further disclosure is mandated. This includes certain residential mortgage and variable rate transactions, 12 C.F.R. § 226.19, refinancings, assumptions, and variable rate adjustments, 12 C.F.R. § 226.20; and circumstances where early disclosures are rendered inaccurate prior to the date of consummation, 12 C.F.R. § 226.17(f). Begala v. PNC Bank, National Association, 163 F.3d 948, 950 (6th Cir.1998). Here, Debtor alleges only that the Loan Modification constitutes a refinancing of the Original Loan, which required the issuance of new disclosures. Debtor's Mem. ¶ 8.

Regulation Z provides in pertinent part: "A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer." 12 C.F.R. § 226.20(a).

Notably § 226.20(a) superceded 12 C.F.R. § 226.8(j) which contained a broader definition of refinancing: "If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such shall be considered a new transaction subject to the disclosure requirements of this part." 12 C.F.R. 226.8(j) (rescinded in 1982). Explaining the new § 226.20, the Official Staff Interpretation states: "1981 changes: While the previous regulation treated virtually any change in terms as a refinancing requiring new disclosures, this regulation limits refinancings to transactions in which the entire original obligation is extinguished and replaced by a new one." 12 C.F.R. Pt. 226, Supp. I at § 226.20, References (1990) (emphasis added). Thus, even if the Court were satisfied that some kind of modification of the Loan occurred,

the record is completely devoid of any evidence that this modification <u>completely replaced and extinguished the Loan</u> as required under Regulation Z.[14]

Given that the record does not support that the 1998 Loan Modification occurred, it is not surprising to find an equal absence of evidence supporting Debtor's assertion that she did not receive the required disclosures for such a transaction.  Debtor had no recollection of going to settlement on a refinancing, nor was she questioned as to whether she received or even searched through her records for documents relating to such a transaction.  As with the Loan, Debtor bears the burden of producing some scintilla of evidence that a TILA violation occurred with respect to the alleged Loan Modification, and there was none.

**CONCLUSION**

Debtor has failed to prove that she did not receive the alleged requisite disclosures with regard to Loan, and has not shown that a refinancing of the Loan occurred that would require additional disclosures under TILA and/or HOEPA.  I note that confirmation of Debtor's Chapter 13 Plan is dependant upon either (1) successful prosecution of

---

[14] As Debtor fails to demonstrate that the alleged Loan Modification meets the definition of a refinancing, I need not address Debtor's argument that the Loan Modification does not fall under § 226.20(a)(2) of Regulation Z, which is one of five exceptions to a refinancing.  Debtor's FOFCOL ¶ 8.  As noted by the Board:

> 2. Exceptions.  A transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing.  Section 226.20(a)(1) through (5) lists 5 events that are not treated as refinancings, even if they are accomplished by cancellation of the old obligation and substitution of a new one.

12 C.F.R., Pt. 226, Supp. I. at § 226.20(a)1. (1990).  If, as here, the transaction does not meet the general definition of a refinancing, the exceptions are simply not implicated.

this adversary and an assessment of damages that meet or exceed the Claim amount or (2) a negotiation of a loan modification with Citimort. Debtor has failed at meeting the former option, requiring judgment in favor of Citimort in this adversary proceeding. Whether the second option has occurred is more appropriately addressed at the upcoming confirmation hearing, but given Debtor's inability to negotiate a settlement of the Claim over the last five years of bankruptcy protection, dismissal of her bankruptcy case seems a *fait accompli*.[15]

An Order consistent with the foregoing Memorandum Opinion shall issue.

                                               DIANE WEISS SIGMUND
                                               Chief U.S. Bankruptcy Judge

Dated:   February 15, 2006

---

[15] As such, I need not address Citimort's assertion that it should also be allowed to recoup $35,815.31 in post-judgment taxes it allegedly paid with regard to the Property because it "would be permitted to reassess damages in state court to include this tax payment." Citimort FOFCOL ¶ 17. If Citimort has not reached an agreement with Debtor by the confirmation hearing, the bankruptcy case will be dismissed and it will be free to pursue whatever remedies are allowable under Pennsylvania law.

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| DELORES E. ROSS, | : | Bankruptcy No. 04-33649DWS |
| | : | |
| Debtor. | : | |
| | : | |
| DELORES E. ROSS, | : | Adversary No. 04-1024 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITIFINANCIAL MORTGAGE CO., INC., | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

**AND NOW**, this 15th day of February 2006, upon trial of the Complaint of Debtor/Plaintiff, Dolores E. Ross ("Debtor"), and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that Judgment is entered in **favor of Defendant** Citfinancial Mortgage Co., Inc.

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

-2-

<u>Copies to</u>:

David A. Scholl, Esquire
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St. Albans Avenue
Newtown Square, PA 19073

Leslie E. Puida
Mellon Independence Center
701 Market Street
Suite 5000
Philadelphia, PA 19106-1532

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O. Box 40119
Philadelphia, PA 19106-0119

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107